[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the judicial district of Danbury. The plaintiff, whose maiden name was Louise Sjoblom, and the defendant were married in Brookfield, Connecticut on June 5, 1982. The plaintiff has resided continuously in the state of Connecticut for at least twelve months prior to the date the complaint was filed. The marriage between the parties has broken down irretrievably without any reasonable prospect of reconciliation. There are two minor children issue of the marriage: Matthew Pelliccione, whose date of birth is December 19, 1985, and Christopher Pelliccione, whose date of birth is March 4, 1988. No other children have been born to the plaintiff since the date of the marriage. Neither party has received state or local assistance.
The plaintiff was born August 21, 1957. She testifies to be in "fine" health. She earned an associate's degree from Bryant College in 1977 and was first employed as a secretary. In the first couple of years of their marriage, both parties worked full time. When the parties' first child, Matthew, was born, the plaintiff left work and was a full-time housewife. The plaintiff went back to work after their second child, Christopher, was in school full time.
The plaintiff's first job back in the work force was with the Ridgefield Board of Education, where she continues to maintain employment. The plaintiff's current position is administrative secretary. The plaintiff works full time and earns approximately $38,500 per year. Through her employment, the plaintiff is provided with medical insurance, life insurance, and a pension.
The defendant was born on March 12, 1953. He is a college graduate and has been employed as a structural engineer his entire professional career. Approximately seven years ago, the defendant founded and joined the firm of Hallama, Pelliccione and Van der Poll. The firm consists of the three named partners. All three are equal partners. The defendant's CT Page 2289 partner, Mr. Donald J. Hallama, testified that the defendant's anticipated gross income for the year 2002 is $170,000. In prior years, the defendant earned the following sums: 2001 — $171,633; 2000 — $196,061; 1999 — $215,086; 1998 — $141,480; and 1997 — $109,001.
The parties' largest asset is the marital residence located at 63 Ledges Road, Ridgefield, Connecticut. In 1979, the defendant, prior to meeting the plaintiff, purchased this real estate from his uncle, Vincent Pelliccione, for approximately $25,000. The parcel is three acres and is essentially located on the side of a cliff. The defendant and his uncle cleared the lot and used the timbers to build the house. The defendant testified, and the plaintiff did not dispute, that he built the house himself.
The plaintiff and defendant began dating when the house was being built. In April of 1982, the defendant moved into the house. At the time of the parties' marriage, in June of 1982, the plaintiff moved into the residence. The parties have continuously resided in the residence until August 7, 2001, when the plaintiff and minor children vacated the property. The defendant continues to reside in the marital residence.
Robert Petrini, a certified real estate appraiser, testified that the property had a fair market value of $580,000. The defendant disputed this appraisal. It is the defendant's opinion that the property has a fair market value of approximately $500,000. The court finds the testimony of Mr. Petrini reliable, persuasive and credible. There is no mortgage on the property.
The defendant owns a one-third interest in the partnership of Hallama, Pelliccione and Van der Poll. The plaintiff engaged the services of Mark Harrison to appraise the defendant's interest in this partnership. Mr. Harrison is a certified public accountant, accredited business evaluator and a lawyer. Mr. Harrison first evaluated the defendant's interest in the partnership as of December 31, 2001. A subsequent update was performed within ninety days prior to the trial of this matter.
Mr. Harrison considered and utilized three commonly used and generally accepted accounting approaches to value the subject partnership, namely: (1) net asset based approach; (2) market based approach; and (3) income based approach. Although Mr. Harrison utilized all three approaches and testified that all three methods drew essentially the same conclusions, in Mr. Harrison's expert opinion, the net asset approach was the most appropriate method. It is Mr. Harrison's opinion that the defendant's interest in Hallama, Pelliccione and Van der Poll is worth $91,000. CT Page 2290
The defendant disputes this claim. It is the defendant's opinion that his value in the partnership is essentially his earnings and if he were to withdraw from the partnership, he'd simply receive one-third of the then existing accounts receivables.
The court finds Mr. Harrison's testimony reliable, credible and persuasive. The court finds that the defendant's interest in Hallama, Pelliccione and Van der Poll has a value of $91,000.
The evidence regarding the parties' other assets is essentially uncomplicated and not in dispute. The parties hold, either individually or jointly, several bank accounts, deferred compensation accounts, stocks, pensions and miscellaneous assets. There was no disputed testimony as to the existence or value of these assets. The court identifies the following as the assets of the parties, with the values as of the date of the trial:
SAVINGS ACCOUNTS/STOCK
Discover $ 4,389.56
ING Direct 61,354.26
People's checking/savings 101,364.00
People's certificate of deposit 25,707.00
Union Savings certificate of deposit 24,311.40
U.S. savings bond 12,500.00
Gabelli Growth Fund 18,340.00
Janus Growth Income Fund 16,711.00
Dreyfus CT Muni Bond Fund 16,181.00
MetLife stock (94 shares) 2,715.00
American Century Funds 3,145.32
PENSIONS/RETIREMENT/DEFERRED COMP/IRAs
IRA (on plaintiff's financial affidavit) 1,493.27 CT Page 2291
SEP (on plaintiff's financial affidavit) 5,214.35
Dreyfus A Bonds (IRA) 9,742.00[1]
Fidelity Equity Income II (IRA) 21,895.00[2]
Fidelity Independence Fund (IRA) 3,342.00
Scudder St. Bond Fund (IRA) 18,348.00
Scudder Large Company Growth Fund (IRA) 30,845.00
Dreyfus Funds 4,322.00
Fidelity International Bond Fund 9,754.00
Vanguard Equity Income Fund 20,877.00
LIFE INSURANCE (CASH VALUE)
MetLife 8,737.71
Prudential 2,237.34
MetLife 5,074.16
OTHER
Rental security deposit 20,150.00
Tax refund 10,447.00
Plaintiff's Pension Value Unknown
The parties have no debts or liabilities.
The more controversial aspect of this case clearly involves the parties' two minor children and the defendant's relationship, or lack thereof, with each of the boys. Given all the testimony, it is this court's opinion that the current status of the boy's relationship with their father is the result of the plaintiff and defendant's longstanding dysfunctional marital relationship.
The plaintiff testified that from almost the beginning of the marriage she felt little love from or companionship with the defendant. From the CT Page 2292 early years, the plaintiff testified that there was a lack of communication. The plaintiff would ask the defendant a question and receive no response. The plaintiff felt as if her opinion had no value. The plaintiff would sit next to the defendant and the defendant would respond by asking her why she had to sit so close. They enjoyed little or no social life. The plaintiff moved out of the master bedroom more than five years ago. Their sexual relationship is and has been nonexistent. The last time the plaintiff and defendant kissed or hugged was approximately ten years ago. This testimony was essentially undisputed.
There was no testimony from either party that would indicate to the court that either attempted to address the deplorable state of their relationship through counseling or some other professional intervention. From the years of no emotional attachment, the plaintiff withdrew from the relationship and, from the court's review of the testimony in its entirety, was essentially isolated within her own home.
The boys came along and not only was there no change in the plaintiff and defendant's relationship, but the testimony would indicate, with the exception of when the children were toddlers, the defendant shared the same kind of relationship with the children as he did with the plaintiff. There was little interaction, little attentiveness, no manifestations of love and no nurturing. Despite this being evident to the plaintiff, again, nothing was done to address the situation.
To the contrary, the plaintiff would appear to have drawn the boys into her isolation. The testimony was undisputed that the plaintiff and children would have dinner together and secret themselves away upstairs in the boys' bedroom before the defendant arrived home. The plaintiff slept on the floor in the boys' bedroom for years. The plaintiff enlisted the boys' support in her divorce, as evidenced by the boys' signature on plaintiff's letter to defendant, Defendant's Exhibit B. From the children's birth, they have borne witness to their mom and dad interact with each other as strangers, if not enemies, and then were unknowingly enlisted to be a part of this dynamic, clearly on the plaintiff's side of the enemy lines.
It appears clear to the court that this tragedy was set in motion by the defendant, a man who has no idea how to show love or affection, with the exception of bringing home a paycheck. The plaintiff also bears responsibility in this tragedy, though, for her failure to separate her dreadful relationship with the defendant from that of the boys and failing to take steps to ensure that her sons shared some kind of meaningful relationship with their father. CT Page 2293
This court heard too many times from the plaintiff that the boys were ". . . wonderful, great kids in all respects, except . . ." their relationship with their father. That, in this court's opinion, is a huge and important exception.
The plaintiff claims that the status of his relationship with the boys is the defendant's own fault. This court agrees that there was little, if any, testimony that the defendant possessed any nurturing qualities and failed to extend himself to his sons in any meaningful way. This court would not be surprised if the defendant was found to be devoid of any nurturing qualities. He is, nonetheless, the father of these two children and this divorce action will not change that.
The defendant claims that the plaintiff interfered with his ability to have a relationship with the boys. Although the court is not aware of any apparent efforts made by the defendant to form a meaningful relationship with his sons, the court is of the opinion that the plaintiff did, in fact, act in ways to alienate the boys' affection from their father.
This court could not agree more with the comments of Ms. Piascik that the plaintiff and defendant are responsible for their own horrific relationship and they have to accept responsibility for the results of that relationship, which include the void between father and sons.
This court will not further promote the degradation of the boys' relationship with their father by entering orders of sole custody and no visitation. Although the relationship between plaintiff and defendant is clearly over and has been for several years, they still bear the relationship of mother and father and all the responsibilities that go along with that. Something should have been done years ago, but as far as this court is concerned, it is not too late now. The plaintiff and the defendant shall make all efforts to ensure their children share a meaningful relationship with their parents. It should go without saying that, regardless of how far short a parent may fall in a child or spouse's expectations, the parent-child relationship is a meaningful one that cannot simply be dismissed.
Having reviewed all of the evidence and considered all of the relevant statutory criteria, the court enters the following orders.
 ORDERS A. BY WAY OF DISSOLUTION
1. The marriage between the parties is dissolved, and each party is CT Page 2294 declared to be single and unmarried.
 B. BY WAY OF CUSTODY AND VISITATION
1. The parties shall share joint legal custody, with the children primarily residing with the plaintiff. The plaintiff shall make all day-to-day decisions regarding the minor children. As to the children's health, education and welfare, the parties shall confer. In absence of an agreement, the plaintiff shall make the final decision.
2. Both parties shall work diligently toward and fully support the reunification of the defendant and two minor children, In furtherance thereof, the court appoints Dr. Deborah Gruen, of Westport, Connecticut, to facilitate the reunification. Within three (3) days of the court's decision, the parties shall confer with Dr. Gruen to set up an initial appointment with her. Both the plaintiff and defendant shall attend this first meeting together. Thereafter, the parties are to follow any and all recommendations of Dr. Gruen regarding the reunification process including, but not limited to, additional joint or individual meetings, as well as giving Dr. Gruen access to the minor children.
3. The defendant shall continue to meet with Dr. Cohen on a regular basis. The focus of the sessions, at this point in time, should deal with the defendant's parenting inadequacies, his inability to realize and accept responsibility for his horrible relationship with his sons and the reunification process.
4. The court highly recommends that the plaintiff engage in therapy as well.
5. It is noted by the court that time is of the essence and neither party shall unreasonably delay this process.
6. The defendant shall pay all costs associated with the reunification counseling and therapy, excluding the plaintiff's individual therapy.
7. The court will retain jurisdiction over the issues regarding custody, visitation and reunification.
 C. BY WAY OF SUPPORT
1. The plaintiff's gross annual income is $38,404, and the defendant's is $170,000. The defendant is ordered to pay to the plaintiff child support in the amount of $445 per week for both children, which is substantially in compliance with the child support guidelines. CT Page 2295
2. The plaintiff shall provide medical insurance for the benefit of the minor children which she has through her place of employment. In the event the plaintiff does not have medical insurance available to her and the defendant has medical insurance for the minor children available to him through his employment, then he shall name the minor children as insureds. All unreimbursed medical, dental (including orthodontia), psychiatric/psychological, prescriptive and optical expenses incurred on behalf of the minor children shall be divided 40 percent by the plaintiff and 60 percent by the defendant.
The provisions as to the maintenance of the health insurance are subject to and are in accordance with Connecticut General Statutes § 46b-84d.
The defendant shall maintain unencumbered life insurance on his life in the amount of $50,000, naming the minor children as equal beneficiaries for so long as he has an obligation to pay child support. The defendant shall furnish to the plaintiff upon her request, but no more than once annually on the first business day in January, proof that he is insured in the specified amount and that the beneficiary is as required herein.
 D. COLLEGE EDUCATION
1. The parties have set aside certain funds for the children's education. The defendant's financial affidavit indicates approximately $34,400 for each child. The plaintiff's financial affidavit indicates an additional $17,900 for each child. These accounts shall be preserved and utilized for post high school educational expenses for the children. Pursuant to Public Act 02-128, the court retains jurisdiction to make appropriate orders regarding college educational expenses.
 E. BY WAY OF ALIMONY
1. The defendant is ordered to pay the plaintiff alimony in the sum of $462 per week. The provisions of §§ 46b-86 (a) and 46b-86 (b) are applicable. Alimony shall be payable until the death of either party, the plaintiff's remarriage, or her cohabitation pursuant to statute, which may cause a modification, suspension or a termination of the alimony.
2. The defendant shall have sufficient life insurance in place to guarantee the alimony obligation at any time period. The defendant's current financial affidavit indicates $215,800 in life insurance. Excluding that portion of the insurance which is designated for the minor children, these policies shall be maintained and the defendant shall CT Page 2296 designate the plaintiff as the beneficiary as long as alimony is payable.
 F. BY WAY OF PROPERTY ORDERS
1. The defendant is the owner of a one-third interest in a partnership known as Hallama, Pelliccione and Van der Poll. The defendant shall retain full and complete ownership of all of his interest in the partnership free and clear of any claim by the plaintiff.
2. The plaintiff is to quitclaim to the defendant all her right, title and interest in the family home located at 63 Ledges Road, Ridgefield, Connecticut by way of quitclaim deed. Counsel for the defendant is to hold the quitclaim deed in escrow pending either the sale or refinance of the property at defendant's option. If the defendant chooses to refinance the property in order to pay the defendant her share of the equity in the property, said refinance shall take place within sixty (60) days of the date of this dissolution. The buyout amount shall be $270,000 payable from defendant to plaintiff, which represents 50 percent of the fair market value of the property after the payment of customary closing costs, including realtor's commission. In the event the defendant chooses to sell the marital residence, the same shall be placed on the market for sale within twenty-one (21) days of this decision. Net proceeds from the sale shall be divided fifty-fifty (50/50). The, term "net proceeds" is intended to mean the gross sales price less the payment of any real estate commission, closing costs, attorneys fees, and less any usual closing adjustments such as, but not limited to, real estate taxes, fuel oil and conveyance taxes. The court will retain jurisdiction over any dispute that may arise regarding the sale of the property. It is incumbent upon the defendant to aggressively market the property for sale, which would include regularly reviewing the sales price and reducing it on a regular basis, pending the sale. The property shall not be listed for any more than $580,000.
3. On the defendant's financial affidavit, he lists 67 Plymouth Road, Stamford, Connecticut as well as a Solomon Smith Barney municipal bond account. Both parties agree that these assets belong to the defendant's parents and the same shall be excluded from court's orders.
4. The defendant's People's Bank checking and savings account shall be divided between the parties evenly.
5. The plaintiff shall retain her Discover account and ING Direct Account as listed on her financial affidavit. CT Page 2297
6. The plaintiff shall retain the American Century Fund as listed on her financial affidavit.
7. The defendant shall transfer to the plaintiff the Union Savings certificate of deposit and the People's Bank certificate of deposit, as listed on his financial affidavit.
8. The defendant shall retain the U.S. savings bonds, the Gabelli Growth Fund, the Janus Growth Income Fund, the Dreyfus CT Muni Bond Fund and the ninety-four shares of Met Life.
9. The plaintiff shall retain the IRA and SEP account, as well as her school pension, as listed on her financial affidavit.
10. The defendant shall transfer to the plaintiff the Dreyfus A Bonds IRA, the Fidelity Equity Income II Fund IRA and the Scudder Large Company Growth Fund.
11. The defendant shall retain the Fidelity Independence Fund, the Scudder State Bond Fund, Dreyfus Funds, Fidelity International Bond Fund, and the Vanguard Equity Income Fund.
12. The parties shall retain the cash value of their respective life insurance policies.
13. The plaintiff shall retain the rental security deposit.
14. The parties shall divide evenly the state and federal tax refund from tax year 2001.
15. The defendant shall transfer all his right, title and interest in the 1996 Dodge Caravan to the plaintiff. The plaintiff shall retain the 2002 Altima and be responsible for all costs associated therewith. The plaintiff shall transfer to the defendant all her right, title and interest in the 1998 Buick Regal.
 G. BY WAY OF ATTORNEYS FEES 1. Each party shall be responsible for their own counsel fees.
2. The court finds Attorney Henderson's fee reasonable. The parties shall split evenly the fees of Attorney Mark Henderson, with each party being given their respective credit for sums already advanced. Said fees shall be paid to Attorney Henderson within sixty (60) days of the court's decision. CT Page 2298
 H. BY WAY OF MISCELLANEOUS PROVISIONS
1. The plaintiff shall be responsible for payment of Mark Harrison's fee.
2. The plaintiff shall be entitled to claim the older child for purposes of tax dependency, and the defendant shall be entitled to claim the younger child for purposes of tax dependency. When only one child is available to be claimed, the parties shall alternate the same with the plaintiff taking even years and the defendant taking odd years.
3. Each party shall be responsible for all their own medical insurance needs.
4. The arrearage due from defendant to plaintiff for pendente lite alimony and child support shall not terminate but survive this judgment and be paid in accordance with the previous court order.
Bozzuto, J.